## Dinger v. Market Street Trust Co.

*John B. Pearson, Bailey & Rupp*, for plaintiff.

*Arthur Berman, Compton, Handler & Berman, William W. Lipsitt, Shelley, Reynolds & Lipsitt*, for defendants.

SOHN, J., August 20, 1956.—In this case we have a series of preliminary objections. On June 29, 1955, Howard R. Dinger filed his complaint against the Market Street Trust Company, original defendant. The suit concerns the payment of six checks, on which plaintiff alleges he had stopped payment. To this com-

plaint the Market Street Trust Company, on August 18, 1955, filed preliminary objections, which contain a motion for a more specific statement and also a demurrer to the effect that the complaint does not aver a cause of action, in that it does not set forth either the fact or the amount of the loss resulting from the payment of the checks contrary to the stop payment orders allegedly delivered to defendant.

The same day, the trust company filed its complaint against the payee of the six checks, Harold Gross, as additional defendant, denying that it had ever received any stop payment orders, and averring in count 1 that if it was liable to Howard R. Dinger, the said Harold Gross is liable over to it. In count 2, the trust company avers that plaintiff has informed it that he had paid Gross back $250 of the $1,500, which represented the total of the six checks sued upon and, therefore, is subrogated to the rights of Howard R. Dinger, and demands judgment against Harold Gross to the extent of $250 and costs of suit. In count 3, the trust company avers that the loan of the $1,500 is based upon an illegal transaction for the reason that at the time of the loan, Dinger was a retail liquor licensee and that Gross was an officer, director, stockholder, agent and employe of H. & J. Gross, Inc., a licensed distributor of malt or brewed beverages. Wherefore, the trust company claims that Gross could not have enforced payment at law against Dinger, that it had no knowledge of the transaction between Dinger and Gross, that it is entitled to the rescission of the payments made by it and the restoration of the status quo, and that if it is liable to Dinger, Gross in turn is liable to it in the sum of $1,500 and costs of suit.

On September 2, 1955, additional defendant, Harold Gross, filed his preliminary objections to original defendant's complaint. It contained a motion to strike

the allegation that the loan was illegal on the grounds that those averments are scandalous and impertinent because they allege an unlawful act, which is irrelevant to defendant's action and not available as a ground of recovery for original defendant against him. Under the provisions of Pa. R. C. P. 1017(b) (2), he moves that said pleading be stricken. His preliminary objections also contain a demurrer to the effect that the complaint against him by original defendant does not aver a cause of action, in that there is no loss set forth resulting from the payment of the checks and no grounds available for recovery by defendant against additional defendant and, therefore, asks that the complaint of original defendant against him be dismissed.

The same day, September 2, 1955, additional defendant filed a counterclaim against plaintiff, Howard R. Dinger, alleging that the sum of $1,500 was due him from Dinger as the result of a loan made him for the purpose of enabling Dinger to purchase used cars, that the six checks were given in repayment of that loan, and that if he, additional defendant, is liable to Market Street Trust Company upon the cause of action set forth in the complaint against him as additional defendant, then Dinger is liable to Gross in the sum of $1,500 and costs of suit.

On September 21, 1955, Dinger filed preliminary objections to additional defendant's counterclaim, which took the form of a motion to strike additional defendant's counterclaim. The reasons given in support thereof are:

1. Defendant having filed preliminary objections to the third party complaint joining him as additional defendant cannot file a counterclaim against plaintiff until such preliminary objections have been disposed of.

2. Additional defendant has no right to file this counterclaim because it is not founded upon the trans-

action, occurrence or series of transactions or occurrences out of which the original cause of action arose, as required by Pa. R. C. P. 2256(b).

On July 12, 1955, by agreement of counsel, the depositions of Howard R. Dinger, plaintiff, were taken, and filed on August 18, 1955. In his depositions, plaintiff admits that the loan was made him for the purpose of buying the other one-half of a licensed liquor business, and that as a consideration he was to give Gross his beer business.

This suit, as originally brought between plaintiff and defendant, is based upon the alleged failure of the trust company to honor the stop payment orders which defendant says were not given. The liability of defendant turns primarily on whether such stop payment orders were given as required by law. By its preliminary objection, defendant first asks for a more specific complaint giving it the detailed circumstances as to what person or persons, representing the trust company, were given the notices.

The complaint sets forth that on or about September 30, 1953, plaintiff executed and delivered to Harold Gross, additional defendant, six instruments in the form of checks on his account in defendant trust company, payable to the order of Harold Gross. Prior to their having been honored by defendant trust company, plaintiff avers that, "Sometime during the spring of 1954; and before July 21, 1954; (the exact date being now unknown to Plaintiff)", he delivered a stop payment order to the bank covering the six checks. Plaintiff avers that on July 21, 1954, defendant bank paid five of the six checks and that the sixth check was paid on or about July 27, 1954, even though as to this sixth check a second stop payment order was delivered to the bank. Plaintiff sues for the amount of six instruments which total $1,500.

Paragraph five of the complaint, which defendant asserts is not sufficiently specific, reads as follows:

"5. Sometime during the spring of 1954 and before July 21, 1954 (the exact date being now unknown to Plaintiff) and while said instruments were still held by the said Harold Gross and unpaid by the bank, Plaintiff orally informed Defendant not to pay said instruments or charge them or any of them to his account if, as and when they were presented for payment. At the request of one of Defendant's employees, Plaintiff thereupon executed and gave to Defendant a 'stop payment order' on a form provided for that purpose by Defendant. On the said form Plaintiff identified the instruments by payee and amount and directed Defendant not to charge them or any of them to his account since they were intended to be merely promissory notes. Plaintiff handed said stop payment order to Defendant's bookkeeper who accepted the same on behalf of Defendant without any objection as to its form or sufficiency. Plaintiff was not furnished with a copy of said stop payment order."

Defendant objects that the complaint is not sufficiently specific because it does not set forth the exact date when plaintiff gave it the original stop payment order, because it does not identify the employe to whom plaintiff gave the oral order, or the employe who told him to execute a written order, and because it does not name the bookkeeper to whom he delivered the written order. Under section 403(2) of the Uniform Commercial Code, adopted April 6, 1953, P. L. 3, 12A PS §4-403, we find the following provision:

". . . (2) An oral order is binding upon the bank only until the customer has had reasonable opportunity to send the bank a written confirmation if the bank requests such a confirmation. A written order is effective for only six months unless renewed in writing.

"(3) The burden of establishing the fact and amount

of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer."

Under the pleadings complained about here, the time of the delivery of the stop payment order is described as "Sometime during the spring of 1954 and before July 21, 1954 (the exact date being now unknown to Plaintiff)". Such a pleading contemplates a relatively long period of time, to wit, part of March, all of April, May and June, and the greater part of July. We think that plaintiff must aver a more specific date and give the necessary facts, especially here where defendant denies receiving any such stop payment orders. A complaint must state the date of the agreement or a reasonably specific date on which plaintiff relies. This, we believe, is hornbook law. Plaintiff merely sets forth that "Plaintiff orally informed Defendant not to pay said instruments". He does not identify the person to whom his oral notice was given, and it is only reasonable for defendant bank to require the identity of this person with particularity in order that it can answer and properly prepare its defense. It is a well known fact that a bank has numerous bookkeepers, especially one as large as the Market Street Trust Company, so that it is vitally necessary for defendant in preparing its defense to know to whom the stop payment order was delivered. To simply aver that it was handed to a bookkeeper is of no help whatsoever to defendant.

Also, plaintiff avers that, "at the request of one of defendant's employees", he executed the stop payment order. Again we say that it is only reasonable to require plaintiff to name and identify such employe in order that it may prepare its defense.

In his depositions, plaintiff admits that he was not a stranger in the bank in which he dealt. He and Gross both dealt there. He was asked on cross-examination to describe the bookkeeper with whom he said he dealt.

He could not describe her; he could not say whether she was tall or short, heavy or slight, whether she was a brunette or a blonde; he could give no information, he said, about her whatsoever. After he learned that the five checks had been cashed, he put through another stop payment order with respect to these six checks. When asked to whom he gave the stop payment order on this second occasion, he again was unable to describe the girl and only said that it was not the same bookkeeper he had dealt with the first time. Again he was unable to describe the second girl, whether she was tall or short, blonde or brunette, whether or not she wore glasses, or give any particulars whatsoever regarding her appearance. It seems rather strange that plaintiff did not request defendant bank for permission to view and interrogate its bookkeepers and other employes, and to let him have an opportunity to identify the specific persons with whom he dealt. We feel that defendant bank is entirely within its rights in requesting specific information as to whom the stop payment orders were given, and that the complaint as filed must be amended before any other further proceedings can be had in this case.

In W. A. Case and Sons Mfg. Co. v. Cerine, 105 Pa. Superior Ct. 458, at page 460, we find the following:

"The lower court correctly answered the proposition submitted. 'To bind a corporation on a promise of a "representative" the identity and authority of the agent should be set forth': Miner-Hillard M. Co. v. Rosato, 81 Pa. Superior Ct. 94, 97. The precise question here involved was considered in the case of W. E. Heyser L. Co. v. Whiting L. Co., 62 Pa. Superior Ct. 76. There the affidavit of defense averred an agreement with the defendant 'through its duly authorized agents' and Judge Henderson, speaking for the court, said: 'The general statement that this collateral agreement was made by agents of the company gives no

such information of the identity of the agents or of the time, place and circumstances as would enable the plaintiff to know what it was expected to meet at the trial. As corporations must act through representatives it is essential that such representatives be identified by the description of their offices or their particular connection with the corporation.' "

In our own court, Judge Woodside, in the case of DeMay v. Fellers, Inc., 59 Dauph. 337, says at page 339:

"However, 'to bind a corporation on a promise of a "representative" the *identity* and *authority* of the agent should be set forth': . . . ." (Italics supplied.)

In his depositions, plaintiff identifies the one agent as a woman bookkeeper who sat in the rear of the bank. The other person with whom he dealt he likewise described as a woman, but he is unable to identify her. In neither case is there any allegation that the parties with whom he dealt had authority to bind the trust company defendant.

The history of this case which we have outlined with particularity clearly shows that all of the matters with which the pleadings in this case are concerned turn upon the preliminary objections first filed by defendant to the original complaint. If plaintiff is unsuccessful in establishing the identity of the persons with whom he dealt in giving the stop payment orders, then all the pleadings thereafter will become irrelevant and of no point so far as the ultimate decision in the case is concerned.

In Anderson's Pa. Civ. Pract., volume 2, at page 432, speaking of rule 1028(c), it is stated:

"The court is required to determine all preliminary objections promptly. The effect of this provision is to stay the main action while the ancillary or collateral questions raised by the preliminary objection are de-

termined. The requirement that the court determine all objections need not be literally observed where the determination of less than all of them will dispose of the entire action. In an action in which the defendant raises preliminary objections to the jurisdiction of the court and to the sufficiency of the plaintiff's complaint, the court, if it sustains the objections to the jurisdiction, is not required to determine whether the complaint is adequate. If the plaintiff does not appeal from the decision on the jurisdictional point or if upon appeal the lower court is affirmed the case is ended by the decision of the jurisdictional point and a decision on the pleading point would be unnecessary. In the event that the plaintiff appeals from the decision on the jurisdictional point and the appellate court reverses the lower court, the lower court would then proceed to dispose of the second preliminary objection."

We must, however, give plaintiff an opportunity to amend the complaint as we have specified. If the complaint is not so amended and the specific information given to which defendant is entitled, that will be the end of the case. If the information is given, then all of the other matters raised by the various preliminary objections filed will at that time be considered by the court. We, therefore, make the following

### Order

And now, August 20, 1956, the preliminary objections filed by the Market Street Trust Company, original defendant, to plaintiff's complaint that the complaint does not sufficiently identify the persons with whom plaintiff dealt on behalf of the trust company is hereby sustained, and plaintiff is allowed 20 days from this date within which to file an amended complaint giving the required information. Consideration of all other pleadings is suspended until the amended complaint is filed.